FOWLER v. MICHIGAN BOARD OF PHARMACY.

1. POISONS—NARCOTICS—PERMITS—CHIROPODISTS—LOCAL ANAES-THETICS—PHYSICIANS.

Since duly-licensed chiropodists are called upon to perform operations such as removal of ingrowing nails, growths, and callosities on the foot and to manipulate the bones of the foot and others which would cause tremendous pain to the patient were anaesthetics not used, and are prohibited from administering ''anaesthetics other than local,'' they are entitled to narcotic permits under the uniform narcotic drug act defining physician as ''a licensed practitioner of medicine or osteopathy as defined by law in this State and any other person authorized by law to treat sick and injured human beings in this State and to use narcotic drugs in connection with such treatment'' (1 Comp. Laws 1929, § 6793 et seq., as amended by Act No. 221, Pub. Acts 1939; Act No. 343, Pub. Acts 1937).

2. WORDS AND PHRASES—LOCAL ANAESTHETIC.

A local anaesthetic is one which is confined to one limited part of the body.

3. Poisons—Narcotic　Permits—Chiropodists—Local　Anaes-
thetics.

　　Since chiropodists are not restricted in the administration of
　　　local anaesthetics to those which are nonnarcotic and come
　　　within the broad definition of ''physician'' as the term is used
　　　in the uniform narcotic drug act, they are entitled to nar-
　　　cotic permits (1 Comp. Laws 1929, § 6793 *et seq.*, as amended
　　　by Act No. 221, Pub. Acts 1939; Act No. 343, Pub. Acts
　　　1937).

4. Mandamus—Narcotic Permits—Chiropodists.

　　Duly-licensed chiropodists to whom director of drugs and drug
　　　stores denied narcotic permits *held*, entitled to mandamus to
　　　compel issuance of such permits where such remedy was only
　　　recourse open (1 Comp. Laws 1929, § 6793 *et seq.*, as amended
　　　by Act No. 221, Pub. Acts 1939; Act No. 343, Pub. Acts
　　　1937).

5. Costs—Mandamus—Public　Question—Narcotic　Permits—
Chiropodists.

　　No costs are allowed in mandamus proceeding to compel issuance
　　　of narcotic permits to duly licensed chiropodists where public
　　　question was involved in the construction of statutes (1 Comp.
　　　Laws 1929, § 6793 *et seq.*, as amended by Act No. 221, Pub.
　　　Acts 1939; Act No. 343, Pub. Acts 1937).

Mandamus by Ralph E. Fowler and Harold H.
Finch against Michigan Board of Pharmacy and
F. N. Taft, Director of Drugs and Drug Stores, to
compel the issuance of a license under the State
narcotic act. Submitted June 26, 1945. (Calendar
No. 43,038.) Writ granted October 8, 1945.

*Leonard F. Donaldson,* for plaintiffs.

*John R. Dethmers,* Attorney General, *Edmund E.
Shepherd,* Solicitor General, and *Daniel J. O'Hara,*
Assistant Attorney General, for defendants.

Butzel, J.　Plaintiffs Fowler and Finch are duly-
licensed chiropodists under the Michigan State

chiropody act, Act No. 115, Pub. Acts 1915 (1 Comp. Laws 1929, § 6793 *et seq.*, as amended by Act No. 221, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 6793 *et seq.*, Stat. Ann. and Stat. Ann. 1944 Cum. Supp. § 14.661 *et seq.*]). It provides that an applicant must have certain defined qualifications before taking an examination for license to practice chiropody. He must pass an examination under the immediate authority and direction of the board of registration in chiropody in 17 or more subjects which include surgery, materia medica, anatomy, histology, neurology, pathology, mechanical orthopedics, et cetera. Section 2 of the act provides that a certificate of qualification or license "shall not authorize chiropodists to amputate the human foot or toes or to use or administer anaesthetics other than local."

Michigan has adopted the uniform narcotic drug act (Act No. 343, Pub. Acts 1937 [Comp. Laws Supp. 1940, § 9234–25 *et seq.*, Stat. Ann. 1944 Cum. Supp. § 18.1071 *et seq.*]). Under section 1 of the act a physician is defined as "a licensed practitioner of medicine or osteopathy as defined by law in this State and any other person authorized by law to treat sick and injured human beings in this State and to use narcotic drugs in connection with such treatment." Under section 7 of the act, a physician in good faith and only in the course of his professional practice may prescribe, administer and dispense narcotic drugs or may cause them to be administered by a nurse or interne under his direction and supervision. Under the former narcotic drug act (Act No. 172, Pub. Acts 1931), the definition of a physician was limited to a licensed practitioner of medicine or osteopathy as defined by law in this State. It did not include any other person authorized by law to treat sick human beings in this State

and to use narcotic drugs in connection with such treatment. A still earlier act did not include osteopaths.

Plaintiffs claim, and it is not denied, that previous to 1943 chiropodists were able to procure a narcotic permit from the State. In 1943, however, the attorney general issued an opinion to the director of drugs and drug stores, holding that there was no authority under the chiropody act which would give a chiropodist the right to use narcotics in the course of his practice, and that the right to administer a local anaesthetic limited chiropodists to the use of several substances used in local anaesthetics, such as butaline or 2 per cent. novocain, evidently claimed to be nonnarcotic.

Previous to instituting the present suit brought by plaintiffs to mandamus the defendants to issue a narcotic permit to them, plaintiffs joined in a bill of complaint filed in the United States district court for the eastern district of Michigan asking that the collector of internal revenue be restrained from refusing to accept plaintiffs' applications for reregistration under the provisions of the Harrison narcotic act * and that he be ordered to issue forthwith special tax stamps as evidence of such reregistration. The district supervisor for district No. 8, narcotic bureau of the United States treasury department, also was made a party defendant. The case was heard before Honorable Frank A. Picard, United States district judge (*Fowler* v. *Kavanagh, Collector of Internal Revenue,* 63 Fed. Supp. 167†). The attorneys for the State have included in their brief appendices which also set forth the opinion which evidently has not been published. In the opinion, there is set forth the clause of section 2 of the chiropody act hereinbefore quoted. The district judge

---

* See 26 USCA, § 2550 *et seq.*—Reporter.
† Published in 1946.—Reporter.

calls attention to how the training in plaintiffs' profession has advanced. The opinion further gives a definition of local anaesthetics as follows:

"Local anaesthetics are anaesthetics that when locally applied produce an absence of sensation in the organ or tissue treated. Narcotics, including cocaine, other derivatives of coca leaves, and similar compounds when properly applied produce such an effect, and are used as local anaesthetics."

It further states that the Michigan statute is similar to the uniform narcotic act adopted by many other States, and that it has been held by the attorneys general of six of these States that members of plaintiffs' profession come within the purview of and are entitled to licenses under the uniform narcotic act. The court further dwelt upon the fact that in the case of *Bruer* v. *Woodworth,* 22 Fed. (2d) 577 (United States district court for the eastern district of Michigan), it was held that an osteopath was entitled to use narcotics although the law of Michigan at that time limited the use of narcotics to physicians, that a practitioner of osteopathy was a physician and entitled to use narcotics in his profession. From a decree in favor of complainants in *Fowler* v. *Kavanagh, Collector of Internal Revenue, supra* (the United States district court), appeal was taken to the circuit court of appeals for the 6th circuit (*Kavanagh, Collector of Internal Revenue,* v. *Fowler* [C. C. A.], 146 Fed. [2d] 961) and it was held that the Federal court ordinarily should not undertake the interpretation of a local law without some views of local judges who are familiar with the intricacies and trends of local law and practice. For that reason, the decree of the district court was reversed and complainants, two of whom are plaintiffs in the instant case, properly began mandamus proceedings in this court in order to obtain such relief

as they are entitled to. Diligent research by attorneys and the court fails to disclose any helpful authorities. The attorney general has added to his brief an opinion by the attorney general of Iowa stating that inasmuch as the podiatrists (chiropodists) were granted the right to use local anaesthetics, the legislature had in mind the use of whatever narcotic drugs might be necessary to produce local anaesthesia. There is also appended to his brief a copy of the opinion of the assistant attorney general of Minnesota who comes to the opposite conclusion. In *Georgia Association of Osteopathic Physicians & Surgeons, Inc., v. Allen, Collector of Internal Revenue,* 31 Fed. Supp. 206 (affirmed 112 Fed. [2d] 52), the court held that an osteopath was not entitled to a permit to use narcotics. The Georgia law at that time did not include osteopaths or contain the broader definition of a physician. The district court for the eastern district of Michigan under a similar act then in force came to a conclusion exactly to the contrary. *Bruer* v. *Woodworth,* 22 Fed. (2d) 577, and *Hostetter* v. *Woodworth,* 28 Fed. (2d) 1003.

The attorney general relies on the familiar maxim *"expressio unius est exclusio alterius,"* and contends that inasmuch as the chiropodists are not mentioned in the act, which specifically mentions physicians, dentists and veterinarians, it was the intention of the legislature not to include chiropodists. He overlooks the broader definition of physicians in the act. The chiropodists are called upon to perform many operations such as removal of ingrowing nails, growths, and callosities on the foot, manipulation of the bones of the foot, et cetera, all of which would cause tremendous pain to the patient were anaesthetics not used. We have held that a chiropractor may practice medicine within

the limits of the chiropractic act,* but in doing so he does not become a licensed physician, surgeon or doctor. *Erdman* v. *Great Northern Life Ins. Co.,* 253 Mich. 579. The narcotic act and the chiropody act taken together indicate that a chiropodist may use local anaesthetics. If "local anaesthetics" do not include the use of narcotics, why did the legislature in section 2 of the chiropody act state that the certificate of qualification or license of the chiropodist does not authorize him to use anaesthetics other than local? No limitations as to local anaesthetics would have been necessary for, if the State is correct, local nonnarcotic anaesthetics may be used by anyone and there would have been no occasion for the law to mention it. We believe local anaesthetic means, as defined in Dorland's American Medical Dictionary (Rev. 1941):

"That which is confined to one limited part of the body."

The agency employed to bring about such anaesthesia is not restricted by the law. This seems to us to be a far more reasonable interpretation of the law, and we so hold. If the legislature had any other intention, and we believe not, the law can be readily amended at the next session.

Plaintiffs have no other recourse except by mandatory procedure and are entitled to a writ. It will be issued. A public question being involved, there will be no costs.

STARR, C. J., and NORTH, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred. The late Justice WIEST took no part in the decision of this case.

---

* See 2 Comp. Laws 1929, § 6739 (Stat. Ann. § 14.533).—RE-PORTER.